No. 24-6155

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

Heather Smith,
*Plaintiff-Appellee,*

v.

Whaleco Inc. d/b/a Temu,
*Defendant-Appellant.*

---

On appeal from an Order Denying Arbitration
U.S. District Court, W.D. Oklahoma No. 5:23-cv-00559-D
The Honorable Judge Timothy D. DeGiusti

---

## APPELLANT'S REPLY BRIEF

---

Benjamin G. Shatz, BShatz@Manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067-3119
(310) 312-4000 ♦ Fax (310) 312-4224

*Attorneys for Appellant*
Whaleco Inc. d/b/a Temu

Oral Argument Requested

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 7

ARGUMENT ............................................................................................ 12

    A.    Smith failed to rebut Temu's evidence she had
           actual notice of the Terms of Use. ...................................... 12

         1.    Smith distorts Temu's argument and
                 disputes points Temu did not raise. ........................... 12

         2.    Precedent within this Circuit shows that
                 Temu successfully shifted the burden to Smith. ......... 15

         3.    Temu's assertion that the Court should
                 alternatively remand for an evidentiary
                 hearing is not inconsistent. ......................................... 18

    B.    Temu provided reasonably conspicuous notice of its
           Terms of Use and satisfied the inquiry notice test. ........... 19

         1.    Smith misrepresents Tenth Circuit law
                 and relies on outdate authorities. ............................... 19

         2.    Examining Temu's screens shows they
                 provide reasonably conspicuous notice. ...................... 22

         3.    Smith attacks individual design elements
                 without considering the screen as a whole. ................. 24

         4.    Smith's authority does not compel ruling that
                 the notice was not reasonably conspicuous. ............... 28

CONCLUSION ........................................................................................ 41

ORAL ARGUMENT REQUEST ........................................................... 41

CERTIFICATE OF COMPLIANCE FOR BRIEFS
        WITH TYPE-VOLUME LIMIT .................................................... 42

# TABLE OF AUTHORITIES

## CASES

*Applebaum v. Lyft, Inc.*,
263 F.Supp.3d 454 (S.D.N.Y. 2017)........................................ 19, 20, 21

*Avedon Eng'g v. Seatex*,
126 F.3d 1279 (10th Cir. 1997)........................................................... 20

*Beattie v. TTEC Healthcare Sols.*,
2019 WL 2189481 (D. Colo. 2019) ............................................... 13, 17

*Bellman v. i3Carbon, LLC*,
563 F.App'x 608 (10th Cir. 2014)....................................................... 12

*Berkson v. Gogo LLC*,
97 F.Supp.3d 359 (E.D.N.Y. 2015) ....................................... 20, 32, 39

*Berman v. Freedom Fin. Network*,
30 F.4th 849 (9th Cir. 2022) ................................................. 19, 22, 27

*Blake v. JPay, LLC*,
2022 WL 1223634 (D. Kan. 2022)................................................. 13, 16

*BOSC, Inc. v. Bd. of Cnty. Comm'rs*,
853 F.3d 1165 (10th Cir. 2017).................................................... 14, 20

*Cordas v. Uber Techs.*,
228 F.Supp.3d 985 (N.D. Cal. 2017)................................................... 17

*Cullen v. Shutterfly Lifetouch*,
2021 WL 2000247 (N.D. Cal. 2021) ............................................. 32, 34

*Cullinane v. Uber Techs.*,
893 F.3d 53 (1st Cir. 2018) ................................................... 19, 22, 32

*Davis v. USA Nutra Labs*,
303 F.Supp.3d 1183 (D.N.M. 2018) ................................................... 16

*Eakins v. Whaleco Inc.*,
721 F.Supp.3d 1252 (W.D. Okla. 2024) ........................... 19, 20, 28, 31

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023).............................................................. 21

# TABLE OF AUTHORITIES
## (continued)

*Fontanez v. Whaleco, Inc.*,
No. 53-2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023).........17, 19-20, 28-30

*Gennaro v. Avvo, Inc.*,
2019 WL 13488559 (S.D. Cal. 2019)...................................................27

*Ghazizadeh v. Coursera, Inc.*,
2024 WL 3455255 (N.D. Cal. 2024) ....................................................23

*Hancock v. AT&T*,
701 F.3d 1248 (10th Cir. 2012), *abrogated on other grounds by*
*Atl. Marine Constr. v. W.D. Tex.*, 571 U.S. 49 (2013).......12, 16, 18, 20

*Howard v. Ferrellgas Partners*,
748 F.3d 975 (10th Cir. 2014).......................................................18, 19

*Hu v. Whaleco, Inc.*,
2024 WL 4481439 (E.D.N.Y. 2024)..........................................28, 31, 32

*Island Peak Ranch v. FIIK Inv. & Holdings*,
2008 WL 2673925 (D. Utah 2008) ......................................................12

*Ivy Bridge v. Nature's Sunshine Prods.*,
2022 WL 604857 (D. Utah 2022) .........................................................13

*Johnson v. Whaleco, Inc.*,
2023 U.S. Dist. LEXIS 184104 (M.D. Fla. 2023).........19-20, 24, 28, 31

*Kohler v. Whaleco, Inc.*,
2024 WL 4887538 (S.D. Cal. 2024).....................................................28

*La Force v. GoSmith, Inc.*,
2017 WL 9938681 (N.D. Cal. 2017) ....................................................16

*Lee v. DoNotPay*,
683 F.Supp.3d 1062 (C.D. Cal. 2023) .................................................23

*Levine v. Vitamin Cottage Nat. Food Markets*,
2021 WL 4439800 (D. Colo. 2021) .....................................................16

*Mahram v. The Kroger Co.*,
104 Cal.App.5th 303 (2024) ...............................................................23

4

*Martinez v. Capstone Rest. Grp.*,
2021 WL 1723776 (D. Colo. 2021) ..................................................... 16

*Melnick v. TAMKO Bldg. Prods.*,
2022 WL 4355299 (D. Kan. 2022)....................................................... 12

*Meyer v. Uber Techs.*,
868 F.3d 66 (2d Cir. 2017) ..................................... 16, 19, 21-22, 29-30

*Moyer v. Chegg, Inc.*,
2023 WL 4771181 (N.D. Cal. 2023) .................................................... 27

*Nardo v. HomeAdvisor*,
2022 WL 17547940 (D. Colo. 2022),
*report & rec. adopted*, 2022 WL 17547938 ....................................... 13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ...................................................... 19, 30

*Nicosia v. Amazon.com*,
834 F.3d 220 (2d Cir. 2016) ......................................................... 32, 38

*Oberstein v. Live Nation Entm't*,
60 F.4th 505 (9th Cir. 2023) ................................................. 11, 22, 30

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .............................................................. 30

*Peter v. DoorDash, Inc.*,
445 F.Supp.3d 580 (N.D. Cal. 2020).............................................. 27, 29

*Petrie v. GoSmith, Inc.*,
360 F.Supp.3d 1159 (D. Colo. 2019) ............................................. 13, 17

*Selden v. Airbnb, Inc.*,
2016 WL 6476934 (D.D.C. 2016) ....................................................... 30

*Selden v. Airbnb, Inc.*,
4 F.4th 149 (D.C. Cir. 2021) .............................................................. 19

*SRI of N.M. v. Hartford Fire Ins.*,
2015 WL 12803774 (D.N.M. 2015) .................................................... 12

# TABLE OF AUTHORITIES
## (continued)

*Starke v. SquareTrade,*
    913 F.3d 279 (2d Cir. 2019) ............................................................ 19

*Walker v. Neutron Holdings, Inc.,*
    2020 WL 703268 (W.D. Tex. 2020) ................................................ 27

*Waltrip v. Pilot Travel Ctrs.,*
    2022 WL 684327 (D.N.M. 2022) ..................................................... 16

*Wilson v. Redbox Automated Retail,*
    448 F.Supp.3d 873 (N.D. Ill. 2020) ......................................... 32, 36

*Xlear, Inc. v. Focus Nutrition,*
    893 F.3d 1227 (10th Cir. 2018) ...................................................... 24

## STATUTES

Federal Arbitration Act .......................................................................... 18

## OTHER AUTHORITIES

Jeffrey Gottfried, Americans' Social Media Use,
    https://www.pewresearch.org/internet/2024/01/31/
    americans-social-media-use/ (Jan. 31, 2024) .................................. 25

Katherine Haan, Top Website Statistics for 2024,
    https://www.forbes.com/advisor/business/software/
    website-statistics/#sources_section (June 4, 2024) .......................... 25

## INTRODUCTION

Temu's opening brief lays out the district court's error in evaluating Temu's sign-in page: i.e., the district court focused myopically on individual design elements in a vacuum without considering the full sign-in page holistically, as federal courts typically do. Smith's brief replicates that error.

It is undisputed that, at least twice, Smith agreed to Temu's Terms of Use and clicked the "Continue" button above a notice stating: "By continuing, you agree to our **Terms of Use** …." (App-109-12, 115, 141.) First, Smith created and logged-in to her Temu account using Temu's smartphone application by entering her phone number, clicking the "Continue with Google" button on the first screen, and then confirmed that she wished to log-in with her existing Google account on another screen. (App-16, 109-11, 115-17, 141.) She was presented with notice text: Temu's Terms of Use containing the arbitration provisions presented in a bolded hyperlink reading "By continuing, you agree to our **Terms of Use** …." (App-110-11, 117.) Second, Smith signed into Temu again, this time using the "Continue with Apple" button and an Apple account associated with the phone. (App-111-12, 141.)

Temu provided reasonably conspicuous notice. The sign-in screen had a white background, light gray text, three dark gray bolded hyperlinks ("**Trouble signing in?**" "**Terms of Use**" and "**Privacy & Cookie Policy**"), and five "Continue" buttons (one allowing users to

sign up with their email address or phone number, and four others allowing users to sign up with common online accounts) (App-115):



Also, the first time Smith signed in and selected "Continue with Google," she was presented with a screen with a white background and gray text, this time with bolded blue hyperlinks, including one labeled **terms of service** linking to Temu's Terms of Use (App-110, 117):



After Smith sued alleging violations of Oklahoma law, Temu moved to compel arbitration based on her agreement to the arbitration provision in Temu's Terms of Use. (App-14-26, 61-96.) Temu explained Smith was on actual notice of the arbitration provision because she clicked the "Continue" button several times, affirming that she agreed to the Terms of Use, or, at least, was on inquiry notice. (App-75-80.) Temu offered evidence Smith had signed in at least twice, each time clicking "Continue." (App-109-12, 141.)

Notably, Smith did not submit a declaration or any other evidence claiming she did not see or read the Terms of Use, or that she did not understand she was agreeing to them. The district court did not properly consider this absence of evidence.

Smith argues Temu's notice was not sufficiently conspicuous because the text was "small" and appeared below a "massive" orange "Continue" button. (App-149, 158-59.) Yet Smith offered no evidence (not even a self-serving declaration) to show she did not see the hyperlink or did not understand that, by clicking "Continue" each time, she was agreeing to the Terms of Use.

In denying arbitration, the district court considered the individual design elements of the sign-in screen separately, without considering how each element related to the others or to the screen as a whole. For example, the court categorized the Terms of Use hyperlink as "relatively small" (App-200), but did not consider that the hyperlink's

size is only slightly smaller than the rest of the text. The court focused on the distance between the notice text and the orange "Continue" button, but did not consider that it appeared immediately beneath the column of "Continue" buttons. And the court noted the Terms of Use hyperlink was in gray font against a white background, but did not consider that nearly all the text, including the other hyperlinks, are also in gray font against a white background. In short, the court considered the design elements in a vacuum.

Smith makes the same analytical mistake, focusing on individual elements of Temu's screen and failing to analyze the elements together as a whole.

This Court, exercising *de novo* review and a "fact-intensive inquiry" from the viewpoint of a "reasonably prudent Internet user," should find Temu provided reasonably conspicuous notice of its Terms of Use and that Smith was at least on inquiry notice that she would be bound by the Terms. *See Oberstein v. Live Nation Entm't*, 60 F.4th 505, 513-15 (9th Cir. 2023).

Moreover, the court also erred by ignoring Smith's failure to present evidence disputing Temu's showing of actual notice, and by not conducting an evidentiary hearing in light of the contract formation dispute. (AOB-19-33). This Court should reverse.

# ARGUMENT

## A. Smith failed to rebut Temu's evidence she had actual notice of the Terms of Use.

### 1. Smith distorts Temu's argument and disputes points Temu did not raise.

Temu explained that although it offered evidence that Smith had actual notice of the Terms of Use, Smith failed to offer anything to rebut Temu's evidence. (AOB-23-38.) Temu's argument followed the well-established analytical framework that review of a district court's decision on a motion to compel arbitration is "similar to summary judgment practice." *Hancock v. AT&T*, 701 F.3d 1248, 1261 (10th Cir. 2012), *abrogated on other grounds by Atl. Marine Constr. v. W.D. Tex.*, 571 U.S. 49 (2013). That is, the movant "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement," and if successful, "the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon, LLC*, 563 F.App'x 608, 612 (10th Cir. 2014). (AOB-23-24.) Thus, a party seeking to compel arbitration need only show "the existence of an arbitration agreement by a preponderance of the evidence." *Melnick v. TAMKO Bldg. Prods.*, 2022 WL 4355299, *4 (D. Kan. 2022); *see also SRI of N.M. v. Hartford Fire Ins.*, 2015 WL 12803774, *3 (D.N.M. 2015); *Island Peak Ranch v. FIIK Inv. & Holdings*, 2008 WL 2673925, *9 (D. Utah 2008).

Temu met this low initial evidentiary burden by submitting authenticated business records demonstrating that, at least twice, Temu provided Smith with the Terms of Use containing the arbitration provisions, including when she signed up for the account and each time she signed in. (App-141.) Temu offered evidence a jury could have found sufficient to establish that Smith had actual notice of Temu's Terms of Use and, thus, the existence of the arbitration agreement. To rebut this, Smith merely needed to submit a simple declaration; she did not. (App-144-74.)

Temu also explained that courts in this Circuit have found evidence similar to Temu's sufficient to meet the initial burden to demonstrate a valid arbitration agreement and shift the evidentiary burden. *E.g.*, *Blake v. JPay, LLC*, 2022 WL 1223634, *4 (D. Kan. 2022) (proffer of statement); *Nardo v. HomeAdvisor*, 2022 WL 17547940, *5 (D. Colo. 2022), *report & rec. adopted*, 2022 WL 17547938 (screenshots showing plaintiff visited website); *Ivy Bridge v. Nature's Sunshine Prods.*, 2022 WL 604857, *4 (D. Utah 2022) (declaration); *Beattie v. TTEC Healthcare Sols.*, 2019 WL 2189481, *2 (D. Colo. 2019) (screenshots of accompanying explanation to plaintiff's assent); *Petrie v. GoSmith, Inc.*, 360 F.Supp.3d 1159, 1162 (D. Colo. 2019) (website data showing plaintiff assented to terms when registering for account). The court did not consider this in denying Temu's motion. (App-198.)

Smith distorts Temu's argument by asserting "Temu misapprehends which party bears the burden in the first instance and when, if ever, it shifts." (AB-19.) This is not true. Temu has never claimed Smith bore the initial burden. Rather, Temu explained it met its initial burden in its motion, in accord with applicable precedent, by proffering admissible evidence sufficient to meet the preponderance standard to support the notion Smith had actual notice of the Terms of Use and, in response, Smith failed to meet her burden to present rebuttal evidence. (AOB-26-28.)

Smith also argues that because Temu failed to "prove[]" her actual knowledge of the Terms of Use, she was "not required to come forward with evidence to rebut her actual knowledge." (AB-23.) But Temu is not required to "prove" Smith had actual knowledge before the burden shifts. Instead, Temu only needed to show "evidence sufficient to demonstrate" her actual knowledge. *BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1177 (10th Cir. 2017). Temu did so, shifting the burden to Smith to present evidence to refute Temu's showing.

Smith's contention that Temu argued only for inquiry notice and did not argue actual notice is wrong and mischaracterizes the record. (AB-18, 22.) Temu's motion showed: (1) Smith logged into her Temu account at least twice (clicking "Continue with Google" and "Continue with Apple" buttons); (2) Temu conspicuously hyperlinked the terms containing the arbitration agreement in a contrasting bold font,

presented in close spatial and temporal proximity to the "Continue" buttons Smith had to click to sign up or log on later; and (3) by clicking the "Continue" buttons during registration, and later when accessing her account using the same process, Smith unambiguously manifested assent to the Terms and "had actual (or at least 'inquiry') notice of the Terms." (App-73, 89.)

Thus, the district court erred in finding Temu had not met its initial burden to show the existence of an arbitration agreement, and erred again when it failed to consider Smith offered no evidence to raise a genuine factual issue. (App-203.)

### 2. Precedent within this Circuit shows that Temu successfully shifted the burden to Smith.

Smith's attempt to distinguish Temu's authorities (AB-21-22) fails and misapprehends Temu's position. That Temu cited cases in which "the defendant *met its initial burden*" (AB-23) is precisely the point. As Smith admits, the non-moving party's "obligation to produce rebuttal evidence" is "triggered" when the movant (as Temu did here) produces evidence to support the existence of an arbitration agreement. (AB-26.)

Moreover, Smith conflates two issues: (1) whether Temu met its burden; and (2) whether Smith attempted to meet hers. Smith characterizes many of Temu's cited authorities as "inapposite" (AB-23) based on minor factual differences, e.g., involving clickwrap instead of

hybrid agreements.[1] Smith fails to appreciate the point for which Temu offered these authorities is not that its agreement is the same as a clickwrap agreement. Rather, the point is that once one party puts forth a showing satisfying its initial burden, the lack of a proffer of evidence by the other side is often fatal. Smith's argument fails to counter this. *See Waltrip v. Pilot Travel Ctrs.*, 2022 WL 684327, *6 (D.N.M. 2022) (plaintiff lacking declaration stating he did not agree to arbitrate did not "show[] a genuine question of material fact precluding an order to arbitrate his dispute"); *Levine v. Vitamin Cottage Nat. Food Markets*, 2021 WL 4439800, *7 (D. Colo. 2021) (plaintiffs who provided no evidence suggesting they denied executing arbitration agreements failed to overcome defendant's initial showing); *La Force v. GoSmith, Inc.*, 2017 WL 9938681, *4 (N.D. Cal. 2017) (same); *Martinez v. Capstone Rest. Grp.*, 2021 WL 1723776, *3 (D. Colo. 2021) (merely denying existence of arbitration agreement, without more, is insufficient to overcome defendant's initial showing); *Blake*, 2022 WL 1223634, *4 (same); *Davis v. USA Nutra Labs*, 303 F.Supp.3d 1183,

---

[1] Smith's digression about clickwrap agreements—an apparent attempt to cast doubt on the validity of hybrid agreements—is irrelevant. (AB-25.) Neither *Blake* nor *Hancock* address hybrid agreements. And *Meyer v. Uber Techs.*, 868 F.3d 66, 70-71, 81 (2d Cir. 2017) specifically examined a hybrid agreement similar to Temu's and concluded "clicking a button marked 'Register,'" next to notice text stating that "[b]y creating an Uber account, you agree to the [hyperlinked] TERMS OF SERVICE & PRIVACY POLICY," was an unambiguous manifestation of assent to the terms.

1192 (D.N.M. 2018) (same); *Petrie*, 360 F.Supp.3d at 1162 (same); *Beattie*, 2019 WL 2189481, *2 (same); *Cordas v. Uber Techs.*, 228 F.Supp.3d 985, 989 (N.D. Cal. 2017) (same).

Finally, Smith argues that this Court should not be persuaded by *Fontanez v. Whaleco, Inc.*, No. 53-2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023) because Smith, unlike the plaintiff there, "has not filed a spate of prior class actions concerning telemarketing." (AB-28-29.) But this is irrelevant. The *Fontanez* court's "reasonable inference" that the plaintiff "should have been aware that online retailers" have Terms of Use based on her prior litigation history did not impact the court's conclusions that plaintiff "never specifically argue[d] that she did not have actual knowledge" of Temu's Terms. (App-101, 104.) *Fontanez* applied the same summary judgment standard to the arbitration motion, found Temu met its initial evidentiary burden to show the existence of an arbitration agreement, shifted the evidentiary burden to the plaintiff to submit evidence refuting that showing, and ruled the plaintiff failed to meet that burden when she did not submit evidence refuting actual notice. (App-101, 104.)

Contrary to Smith's efforts to identify minor distinctions (but not meaningful differences), Temu's authorities support both that Temu met its initial burden to proffer sufficient evidence to demonstrate the existence of an arbitration agreement, and that Smith failed to meet

her burden to present contrary evidence. Therefore, the court erred in denying arbitration.

### 3. Temu's assertion that the Court should alternatively remand for an evidentiary hearing is not inconsistent.

Temu also explained that if the district court believed Smith had adequately disputed the existence of an arbitration agreement, an evidentiary hearing was mandated to evaluate that conflicting evidence. (AOB-36-38.) Given that Smith failed to present any evidence to dispute the existence of an agreement, this is an argument-in-the-alternative.

Smith's contention that Temu cannot make arguments in the alternative is unavailing. (AB-27, n.7.) As discussed in its opening brief and above, Temu's position is Smith failed to raise a genuine factual dispute and thus the court erred in denying Temu's motion. *See, e.g.*, *Hancock*, 701 F.3d at 1248 (court may compel arbitration "if there are no genuine issues of material fact regarding the [existence of] parties' agreement").

If, however, the court instead found a genuine dispute of material fact *did* exist, then it erred in not conducting a hearing to resolve the issue. *See Howard v. Ferrellgas Partners*, 748 F.3d 975, 984 (10th Cir. 2014) (reversing where the district court denied motion to compel arbitration without conducting hearing; when "factual disputes may determine whether the parties agreed to arbitrate," the Federal

Arbitration Act "requires" the case "proceed[] *summarily* to trial").[2] Therefore, if this Court does not reverse, it should at least order the district court to conduct an evidentiary hearing.

## B. Temu provided reasonably conspicuous notice of its Terms of Use and satisfied the inquiry notice test.

### 1. Smith misrepresents Tenth Circuit law and relies on outdated authorities.

Smith asserts that the court's order was "firmly rooted in controlling Tenth Circuit precedent." (AB-2.) Wrong. As to whether the screens in question provided reasonably conspicuous notice, aside from the decision in *Eakins*, the court cited to precedent that would be controlling only within the First,[3] Second,[4] and Ninth,[5] and D.C.[6] Circuits, along with other out-of-circuit district court cases.[7] (App-197-

---

[2] Smith's quibble with Temu's citation to *Howard* (AB-28, n.7) is itself misplaced. Because the court here failed to consider Temu's proffered evidence that an arbitration agreement existed, an unresolved factual question at minimum *was* present here.

[3] *Cullinane v. Uber Techs.*, 893 F.3d 53 (1st Cir. 2018).

[4] *Meyer*, 868 F.3d 66; *Starke v. SquareTrade*, 913 F.3d 279 (2d Cir. 2019).

[5] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014); *Berman v. Freedom Fin. Network*, 30 F.4th 849 (9th Cir. 2022).

[6] *Selden v. Airbnb, Inc.*, 4 F.4th 149 (D.C. Cir. 2021).

[7] *Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454 (S.D.N.Y. 2017); *Fontanez v. Whaleco, Inc.*, No. 53-2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023); *Johnson v. Whaleco, Inc.*, 2023 U.S. Dist. LEXIS 184104 (M.D. Fla. 2023).

202.) The court's order cited only three cases from this Circuit, one for a general description of clickwrap agreements (*Hancock*, 701 F.3d 1248), and two for the general standards on motions to compel arbitration (*Avedon Eng'g v. Seatex*, 126 F.3d 1279 (10th Cir. 1997); *BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165 (10th Cir. 2017)). Smith's assertion about "controlling Tenth Circuit precedent" is incorrect: there is no such precedent.

Smith also heavily relies on trial court decisions involving Temu's pages like *Johnson* and *Eakins*, which reach the conclusion Smith urges, but then self-servingly characterizes *Fontanez* and *Hu*, which arrive at the opposite conclusion, as "unsound" and "flawed." (AB-2-3, 9-16, 28-29, 37-40, 43, 49-54.) It is for this Court to decide which nonbinding precedent is sound or persuasive, not Smith. Temu has already explained why *Johnson* is wrongly decided, and *Eakins* (on appeal to this Court), heavily relies on *Johnson* and thus suffers from the same flawed analysis that should be reversed here.

Further, Smith relies on older cases out-of-step with current law on this topic. Two examples of this are: (1) Smith's citation to *Berkson v. Gogo LLC*, 97 F.Supp.3d 359 (E.D.N.Y. 2015) for the proposition that Temu's notice was not reasonably conspicuous because clicking the "Continue" button does not cause the terms of use to appear in a new screen or in a separate pop-up window on the same screen (AB-46); and (2) Smith's quotation from *Applebaum*, 263 F.Supp.3d at 457:

"a reasonable consumer would not have understood that the light blue 'Terms of Service' hyperlinked to a contract for review" (AB-47).[8]

More recent cases evaluate conspicuousness from the standpoint of the "'reasonably prudent' internet or smartphone user" who "is not a complete stranger to computers or smartphones" and has "some familiarity with how to navigate to a website or download an app." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023); *cf. Meyer*, 868 F.3d at 77 (courts "need not presume" that "a reasonable smartphone user" "has never before" "entered into a contract using a smartphone").[9] That is, the reasonably prudent internet user understands how to create and use online accounts—including online contracting, i.e., manifesting assent to Terms of Use. And the reasonably prudent internet or smartphone user who enrolls for an online account knows she or he is "signing in" or "registering" for an *ongoing continuing relationship* with an internet retailer, which inherently entails contractual terms (e.g., arbitration provisions)

---

[8] Further illustrating *Applebaum* rests on outdated understanding of web design, the full passage reads: "A reasonable consumer would not have understood that the light blue 'Terms of Service' hyperlinked to a contract for review. Lyft argues that coloring words signals 'hyperlink' to the reasonable consumer, but *the tech company assumes too much. Coloring can be for aesthetic purposes.*" *Applebaum*, 263 F.Supp.3d at 467 (emphasis added).

[9] Virtually all American adults use the internet, over 75% are online shoppers, and well over half make multiple online purchases every month. (AOB-46, n.7.)

governing the relationship. *Oberstein*, 60 F.4th at 516 (enforcing terms and compelling arbitration). Smith's insistence that Temu's hyperlinks were not reasonably conspicuous because they were not underlined, because the screen also included other "Continue" buttons, or because the top of the screen included simple icons illustrating "Free shipping" and "Free returns," is outdated and not reflective of current law. (AB-5-6.)

### 2. Examining Temu's screens shows they provide reasonably conspicuous notice.

Temu explained how, based on the relevant design factors, its screens provided reasonably conspicuous notice of its Terms of Use and put Smith on inquiry notice of the terms, including the arbitration provision. (AOB-39-49.) Courts use a fact-intensive inquiry to determine whether any screens provide reasonably conspicuous notice. *See Berman*, 30 F.4th at 856-58; *Meyer*, 868 F.3d at 76. This inquiry involves evaluating the totality of visual design elements, in context, and asking whether the screen *as a whole* provides reasonably conspicuous notice of the terms. *See Oberstein*, 60 F.4th at 515; *Cullinane*, 893 F.3d at 63 (hyperlink's conspicuousness "must be contextualized" and "may not be read in a vacuum").

Temu used a clean, uncluttered screen with a white background, two small minimalist graphics placed well away from the notice text, five buttons of identical size and shape presenting variations on one

option (continue with email, continue with Google, continue with Facebook, etc.), and a single sentence reading "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." (App-115.) Of the 45 words on the screen, the notice text comprises 14 words. A reasonably prudent internet user cannot simply ignore more than 25% of the text. As Temu has shown, myriad courts have found similar opt-in pages sufficient for inquiry notice. (AOB-51-57.)

When examined holistically, Temu's screens provided reasonably conspicuous notice of its Terms. *See, e.g.*, *Mahram v. The Kroger Co.*, 104 Cal.App.5th 303, 306 (2024) (reasonably conspicuous notice where lettering "contrasted with the color of the other lettering" and presented in "a small but readable font"); *Ghazizadeh v. Coursera, Inc.*, 2024 WL 3455255, *10 (N.D. Cal. 2024) (reasonably conspicuous notice where hyperlinked terms presented in black were "darker and bolder" than surrounding gray text and light gray background, the font was not so small that the contrast was not apparent, and the "simple and uncluttered" "context of the overall design" did not detract from the notice); *Lee v. DoNotPay*, 683 F.Supp.3d 1062, 1070 (C.D. Cal. 2023) (reasonably conspicuous notice where "printed in a crisp gray font" contrasting with "plain-white background" and the font "remains of readable size and the whole screen is visible at once").

Smith's argument this Court cannot consider the screens in other cases because Temu did not present the same screenshots to the district

court is wrong. (AB-40-41.) Though appellate courts generally do not consider new *issues* on appeal (*Xlear, Inc. v. Focus Nutrition*, 893 F.3d 1227, 1234 (10th Cir. 2018)), that says nothing about additional supporting *examples*. Temu's motion argued that its screen presented reasonably conspicuous notice and that other courts found similar screens sufficient. (App-85-89.) Further, because Temu discussed many of the same cases in its earlier briefing (*cf.* App-87-89 *with* AOB-52-55), Smith complaint about the screenshots rings hollow.

### 3. Smith attacks individual design elements without considering the screen as a whole.

Smith replicates the court's error of examining individual design elements in a vacuum.[10] Indeed, Smith quotes at length from the court's opinion, essentially restating that analysis. (AB-31-36; App-199-203.)

Smith argues the notice text is "tiny." (AB-33; AB-6, 31, 47 ("small").) But size is relative. The text is not meaningfully smaller than the rest of the text and appears larger than the only other sentence on the page ("Trouble signing in?"). Considering the screen as a whole, the size of the notice text makes little difference. Indeed, Temu presented at least seven comparable screens in which the notice text was smaller

---

[10] Smith acknowledges the district court and the court in *Johnson* "singled out the design choices related to the presentation of the 'barely visible' Terms of Use." (AB-37.) Singling out individual design choices is improper and inconsistent with applicable law.

than other text on the screen yet the courts compelled arbitration. (AOB-52-57.)

Smith also argues that the "giant" orange "Continue" button is so set apart from the other four "Continue" buttons that it is not clear that the notice text applies to the top button. (AB-47-48.) But the design elements on Temu's page, properly taken together, undermine this argument. Temu labels each button "Continue" and the notice text informs the user what "continuing" means. (App-115.)[11] Similarly, Smith describes the other "Continue" buttons as "four colorful buttons," but ignores that those "colors" are merely the familiar logos of universally known companies and the buttons themselves are white and use the same font as the orange button. (AB-45; App-115.)[12] This is not a webpage using colors to distract users. A reasonably prudent user

---

[11] It is clear the top "Continue" button is not any larger than the other "Continue" buttons. (App-115.)

[12] Indeed, 68% of American adults use Facebook. *See* Jeffrey Gottfried, Americans' Social Media Use, https://www.pewresearch.org/internet/2024/01/31/americans-social-media-use/ (Jan. 31, 2024). Globally, Google is the most visited website in the world, accounting for 91.5% of online traffic. *See* Katherine Haan, Top Website Statistics for 2024, https://www.forbes.com/advisor/business/software/website-statistics/#sources_section (June 4, 2024). Twitter and Apple are well-known brands with well-known icons; using such icons for opt-in pages is a common practice. (AOB-42-47.)

would understand that the notice text applies to every button—i.e., "continuing" with any of the buttons constitutes an agreement.

Smith also argues the row of five buttons apparently stops the viewer in her tracks and that, "[o]nce an individual spies the appropriate 'Continue' button, while viewing an interface *from top to bottom*, the individual would have no reason to continue viewing the page." (AB-36 (emphasis added).) But Smith does not dispute that she created her user account on Temu's mobile smartphone app (AB-1) on which everything on Temu's screen is visible at once. Her claim a user would (or even could) view one line at a time, stop her eyes once she found her desired "Continue" button, and never notice the text below, makes no sense.

Smith further argues Temu's hyperlink is not conspicuous because it appears in the same color as the rest of the notice. (AB-32-33, 43.) That ignores other design elements making the hyperlink reasonably conspicuous. For example, Temu bolds the hyperlink and capitalizes the words "Terms" and "Use," creating a clear visual difference between the hyperlink and the rest of the notice text. (App-115.) Moreover, the limited color palette of Temu's screen means that, in context, less is required to distinguish the hyperlink than might be required on another screen with a different design. Smith also ignores that Temu sets the other hyperlink on the page ("Trouble signing in?") in the same

bolded font, giving the user even more notice that bold gray text on this screen indicates a hyperlink.[13]

Smith argues the notice "does not jump off the screen." (AB-46.) But the standard is "reasonably conspicuous notice," or "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it"—the standard is not maximally conspicuous notice. *Berman*, 30 F.4th at 856.

Smith's focus on the court's conclusions about the second page she encountered (AB-33-36, 47-48) is immaterial, since the first page provided reasonably conspicuous notice of Temu's terms before she ever encountered the second page. Smith's argument about the second page also fails. She complains the hyperlink on that page is to "terms of service" (instead of "Terms of Use"), but fails to explain why that matters. (AB-35.) Courts have found there are many acceptable ways to label terms. *See, e.g.*, *Walker v. Neutron Holdings, Inc.*, 2020 WL 703268, *3 (W.D. Tex. 2020) ("Terms of Service"); *Peter v. DoorDash. Inc.*, 445 F.Supp.3d 580, 582 (N.D. Cal. 2020) ("Terms and Conditions"); *Moyer v. Chegg, Inc.*, 2023 WL 4771181, *1 (N.D. Cal. 2023) ("Terms of use"); *Gennaro v. Avvo, Inc.*, 2019 WL 13488559, *4 (S.D. Cal. 2019)

---

[13] Smith's statement that "[o]nline marketers routinely use [similar features to those found in Temu's sign-in screen] to keep customers from understanding the consequences of pressing buttons on a website" (AB-38) is nonsensical and unsupported.

("terms of use"). No reasonable internet user would conclude the second reference was *not* a hyperlink to terms because it was labeled "terms of service."

Applying the proper standard and considering Temu's sign-in page design as a whole, this Court should conclude Temu's page and hyperlinks provided reasonably conspicuous notice to any reasonably prudent contemporary internet or smartphone user, and thus put Smith on inquiry notice of the Terms of Use and the arbitration provision. This Court should therefore enforce that arbitration provision.

### 4. Smith's authority does not compel ruling that the notice was not reasonably conspicuous.

Smith cites two trial court decisions, *Johnson v. Whaleco, Inc.*, 2023 U.S. Dist. LEXIS 184104, and *Eakins v. Whaleco Inc.*, 721 F.Supp.3d 1252 (W.D. Okla. 2024). (AB-36-38.) But other cases reach opposite conclusions. Three other cases—*Fontanez v. Whaleco, Inc.*, No. 53-2023CA-374 (Fla. Cir. Ct. Aug. 29, 2023), *Hu v. Whaleco, Inc.*, 2024 WL 4481439 (E.D.N.Y. 2024), and *Kohler v. Whaleco, Inc.*, 2024 WL 4887538 (S.D. Cal. 2024)—analyzed Temu's screens and came to the conclusion that Temu's screen provided conspicuous notice. (*See Fontanez*, App-100-04.) This Court, exercising *de novo* review, can (and should) examine Temu's screen and find that it sufficient to "put a reasonably prudent person on inquiry notice." *Id.*

Smith gives short shrift to *Fontanez*, arguing the *Fontanez* court determined that plaintiff "had actual notice of Temu's terms—by virtue of the fact that she had filed eleven class action lawsuits within the same court." (AB-49.) That is not what the court did. Rather, *Fontanez* judicially noticed that, in one of the plaintiff's prior lawsuits, the defendant filed a motion for arbitration based on its online terms and conditions, and therefore plaintiff "should have been aware that online retailers have 'Terms of Use' or 'Terms and Conditions' agreements." (App-100-01.) This statement had nothing to do with analyzing Temu's screen and merely ascribed general knowledge to the plaintiff that online retailers use Terms of Use. Nor was it the only basis for that court's holding.

When examining Temu's screen, *Fontanez* applied the same summary judgment standard used in federal courts, and used the required totality-of-the-circumstances approach, to conclude that, because the hyperlink was presented in bold type and the notice was immediately visible when considering Temu's "full-screen user interface design" without requiring the user to scroll to find it and placed below the "Continue" buttons to which it refers, it is reasonably conspicuous. (App-103-04.) *See also Meyer*, 868 F.3d at 78 ("The entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service.").

Smith further criticizes *Fontanez* for not mentioning specific details about the size of the notice, the color or underlining of the hyperlink, or other visual elements. (AB-49-50.) But courts are not required to analyze those or any specific features in particular, let alone in a vacuum. Courts instead look to "'the conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design'" in evaluating conspicuousness. *Oberstein*, 60 F.4th at 515, quoting *Nguyen*, 763 F.3d at 1177; *see also Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (considering that the links were "not blue, underlined, or capitalized" and concluding that they provided reasonably conspicuous notice); *Meyer*, 868 F.3d at 78 (considering size and color, and also that users could view entire screen and need not scroll to see the hyperlink); *Selden v. Airbnb, Inc.*, 2016 WL 6476934, *5 (D.D.C. 2016), *aff'd*, 4 F.4th 148 (courts "have cited factors such as" size and color, but also "whether the user signed up for the agreement using a mobile device"). The *Fontanez* court holistically considered the typeface, the placement relative to the "Continue" button and the rest of the items on the page, and the overall screen composition to correctly conclude the screen satisfied the inquiry notice standard. So should this Court.

Smith also attempts to distinguish *Hu*, but mischaracterizes that court's analysis. Smith argues the *Hu* court "discusses the reasoning of the District Court here and in *Eakins*, and … does not criticize either."

(AB-50.) Not so. *Hu* merely notes that the plaintiff's briefing there quoted *Johnson*, and the same section of the *Hu* opinion acknowledges *Smith* and *Eakins* within a long string cite but does not engage with the reasoning. 2024 WL 4481439, at *13.

Smith argues *Hu* "holds that a different conclusion is warranted under Second Circuit caselaw." (AB-50.) Again, not so. *Hu* states that reasonably conspicuous notice is provided when "the terms are presented in a clear and conspicuous way," then references the "numerous design characteristics" that can inform the analysis, including whether the relevant screen is "uncluttered," the notice and hyperlink(s) are "conspicuous in light of the whole web page," the "entire screen, including the notice and hyperlinked terms, is visible at once," and the notice and hyperlinked terms are "temporally and spatially coupled with the mechanism for manifesting assent." 2024 WL 4481439, at *12. This is consistent with the law nationally.

Here, the court asked whether Temu's screen provided reasonably conspicuous notice, and offered as factors to consider "any visual distractions or features that detract from the clarity of the notice," the size and color of the notice font and the "means of denoting a hyperlink," and "a spatial connection between the notice and the button intended to manifest assent." (App-197.) *Hu* examined the same screen at issue here, applied a substantially similar standard, and concluded it provided reasonably conspicuous notice.

Smith relies on five additional cases—*Cullinane*, *Cullen*, *Wilson*, *Nicosia*, and *Berkson*—but in each, the notice was meaningfully dissimilar and easily distinguishable from Temu's.

**1.** *Cullinane*, 893 F.3d at 63, evaluated the "Link Payment" screens (shown below [taken from Holden Decl. and Exhibits A-3 & B-3, Dkt. Nos. 32-1, 32-2, 32-3]), considering that (1) other non-hyperlinked terms shared the same design features (typeface and size), so the hyperlinks were not recognizable as such; (2) the words "CANCEL" and "DONE" were presented in larger and darker font, making them more conspicuous; and (3) the presence of the additional payment option and PayPal button further pulled attention away from the hyperlinks. Note also the use of a black background, which can make text hard to read. None of those concerns are present here. Moreover, *Cullinane* also considered the hyperlink was "displayed in white bold font within a gray rectangular box," and concluded "these features may have been sufficient to accentuate a hyperlink found within a registration process interface with a plain design and limited content," such as Temu's. *Id.* at 63. Thus, *Cullinane* supports Temu's position.





**2.** In *Cullen v. Shutterfly Lifetouch*, 2021 WL 2000247, *8 (N.D. Cal. 2021)—*which did not involve online notice via hyperlink*—the court considered images on paper order forms (shown below), concluding the size and gray color of the text, and the lack of any header or indicator were not reasonably conspicuous enough to satisfy the inquiry notice test (*see* Grant Decl. and Exhibit D, No. 5:20-cv-06040-NC, Dkt. Nos. 21-1, 21-5). This paper form does not remotely resemble Temu's sign-up page or any other pages courts have approved.



## Questions? Please contact Customer Service at 800-736-4753

When you pay by check, you authorize us to process the payment as a check transaction, or to use information from your check to make a one-time electronic fund transfer from your checking account. A service fee may be charged on returned checks. Post-dated checks are not accepted. By completing and submitting this order form, you are agreeing to all of Lifetouch's terms and conditions located at www.lifetouch.com/terms-conditions and to our privacy policy located at www.lifetouch.com/privacy

**3.** *Wilson v. Redbox Automated Retail*, 448 F.Supp.3d 873 (N.D. Ill. 2020), considered the "My Bag" screen (shown below), concluding the hyperlink did not provide reasonably conspicuous notice in part because (1) "the button for the Terms of Use and accompanying disclosure [we]re not adjacent to the 'Pay Now' button"; (2) there were "two other buttons between the 'Pay Now' button and the link to the Terms of Use"; and (3) the movies selected for rental, the fine print concerning the rental terms, the navigational buttons, and other buttons all "contribute[d] to the general clutter" of the screen. *Wilson*, 448 F.Supp.3d at 883-85; *see* Motion to Compel Arbitration, Exh. A, No. 1:19-cv-01993, Dkt. No. 13-1. The "My Bag" screen does not resemble Temu's.[14]

---

[14] The analysis Smith relies on comes from the section of *Wilson*, pages 883-85, examining the "My Bag" screen. (AB-36-37.) The *Wilson* court also examined a *separate* "Sign In" screen and found its "gray disclosure text surrounding the hyperlinks not reasonably conspicuous because there is insufficient contrast between the gray text and the black background." 448 F.Supp.3d at 886. The detailed portions of the opinion Smith quotes were not describing the "Sign In" screen. And in any event, a gray disclosure on a black background has little bearing on the facts here (where there is gray text against a white background).



**4.** *Nicosia v. Amazon.com*, 834 F.3d 220, 237, 241 (2d Cir. 2016), considered the order page below, concluding the hyperlink was not reasonably conspicuous. Smith argues this page is "similar to the Temu app registration flow" (AB-36), but Temu's hyperlinks are more conspicuous, and little, if anything, about Amazon's page is like Temu's screens.



**5.** *Berkson*, 97 F.Supp.3d at 404, examined the sign-in screen below, noting the hyperlink was "not in large font, all caps, or in bold." But the conspicuousness analysis does not require a hyperlink to be in large font, all caps, or bold. Smith also mentions *Berkson* noted how pressing the SIGN IN button did not cause the terms of use to "appear in a new screen or in a pop-up window on the same screen," nor was the user "required to scroll through" the terms. *Id.* Again, none of that is required. To the extent Smith relies on this reasoning to argue that Temu's notice is not reasonably conspicuous, the argument is not in line with current law.



* * *

Smith's analysis of her cited authorities suffers from the same failing as her analysis of Temu's screen. It "zero[s] in" on and "single[s] out" discrete design choices, but never considers the totality of the entire screen. (AB-37, 39.) When viewed objectively, as a whole, none of the examples Smith offers remotely resemble Temu's screen.

Smith's discussion of Temu's authority similarly misses the point. Shoehorned into a single footnote, it boils down to the observation that Temu's cases involve links in different colors "and in many cases are in all capital letters, or underlined." (AB-41, & n.11.)

## CONCLUSION

The district court erred in several respects, including in its failure to apply the proper evidentiary standards and to conduct a hearing, and also in misunderstanding that any reasonably prudent internet user would have understood she had assented to terms. This Court should reverse the district court's denial of arbitration and order Smith to arbitrate her claims.

## ORAL ARGUMENT REQUEST

As discussed above, this case raises significant new questions of law within this Circuit. Neither party on appeal has identified on-point precedent from this Court on the issue of the reasonably conspicuous notice standard as it relates to hyperlinks. Therefore, oral argument is appropriate and respectfully requested.

41

February 21, 2025     Respectfully submitted,

                      MANATT, PHELPS & PHILLIPS, LLP

                      By: *s/Benjamin G. Shatz*
                          *Attorneys for Appellant*
                          Whaleco Inc. d/b/a Temu

## Certificate of Compliance
## for Briefs with Type-Volume Limit

1.    This **Appellant's Reply Brief** complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(g) and the word limit of Rule 28(e)(2) because, excluding the parts of the document exempted by Rule 32(f), this document contains **6,205** words (within the 6,500 words permitted).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using the Microsoft Word (version Microsoft for Microsoft Word 365 MSO) word processing program in 14-point Century Schoolbook.

February 21, 2025     Respectfully submitted,

                      By: *s/Benjamin G. Shatz*
                          MANATT, PHELPS & PHILLIPS, LLP
                          2049 Century Park East, Suite 1700
                          Los Angeles, CA 90067

                          *Attorneys for Appellant*
                          Whaleco Inc. d/b/a Temu